UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
ADMIRAL INSURANCE COMPANY,

         Appellant,

  -against-

GRACE INDUSTRIES, INC.

         Appellee.
---------------------------------------------------------------- x

MEMORANDUM AND ORDER

06-CV-02955 (ENV)

VITALIANO, D.J.

On December 6, 2004, appellee, Grace Industries, Inc. ("Grace"), filed a petition for Chapter 11 relief with the Bankruptcy Court of the Eastern District of New York. On March 8, 2005, appellant, Admiral Insurance Company ("Admiral"), filed an adversary proceeding to determine its duties under an insurance policy it had issued to the debtor. Subsequently, the parties cross-moved for summary judgment. On March 27, 2006, the bankruptcy court granted Grace's motion for summary judgment and denied Admiral's cross-motion. Judgment was entered for Grace. On June 14, 2006, Admiral filed the instant appeal of the bankruptcy court's decision. For the following reasons, the bankruptcy court's order is affirmed as modified by the stipulated amendment of the parties.

## BACKGROUND

Familiarity with the underlying facts and circumstances of the action, as set forth in In re Grace Industries, Inc., 341 B.R. 399 (Bankr. E.D.N.Y. 2006)[hereinafter "In re Grace"] is presumed. Briefly, to highlight, however, Admiral issued policy A02AG13215, an occurrence-

1

based Commercial General Liability Coverage insurance policy, ("the policy") to Grace, a road construction contracting business, in April 2002. The policy provided coverage for a one year period, from April 1, 2002, through April 1, 2003, in the aggregate limit of $2 million, with $1 million for each occurrence, but with a $50,000 self-insured retention (SIR) provision that made the first $50,000 of any loss the responsibility of the insured (Grace) and not the insurer. Specifically, the SIR endorsement states in relevant part:

> Our total liability for all damages will not exceed the limits of liability as stated in the declarations and will apply in excess of the insured's self-insured retention (the "retained limit"). The "retained limit" is the amount shown below, which you are obligated to pay, and only includes damages otherwise payable under the policy...
>
> "Retained limit": $50,000 Per Occurrence-Other than Products and Completed Operations...
>
> Your bankruptcy, insolvency or inability to pay the "retained limit" shall not increase our obligations under this policy.

Also significant is section IV of the policy, entitled "Commercial General Liability Conditions", which provides, as required by New York law, that the "[b]ankruptcy or insolvency of the insured...will not relieve us [Admiral] of our obligations under this Coverage Part." (The policy, section IV, paragraph 1; see NYCLS Ins. § 3420 (2005) ("Bankruptcy Clause")). This section also contains a "cooperation clause" which states the following:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
> 2. Duties in the Event of Occurrence, Offense, Claim or Suit
>    c. You and any other involved insured must:
>       (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"...

(The policy, section IV, paragraph 2, subpart d).

At the time of Grace's bankruptcy filing, several personal injury lawsuits were pending in New York state courts against Grace by persons allegedly injured at Grace's construction sites during the policy's coverage period. Pursuant to 11 U.S.C. §362, those personal injury lawsuits were automatically stayed by the filing of Grace's Chapter 11 petition. In several of the suits, Grace agreed to lift the automatic stay, pursuant to § 362(a), to allow these plaintiffs to pursue their claims in state court, on the condition that the plaintiffs agreed to restrict their recovery, if any, to Grace's available insurance coverage.

In its adversary proceeding, Admiral sought a declaratory judgment (1) that it had no duty to defend Grace until and unless Grace's $50,000 SIR was actually paid by Grace and exhausted, and (2) that, by agreeing to lift the automatic stay and allowing the personal injury plaintiffs to pursue their actions against Grace, Grace was precluded from the policy's coverage because it had materially breached the policy's cooperation clause. In re Grace, 341 B.R. at 401.[1] On March 27, 2006, Judge Craig granted Grace's motion for summary judgment and denied Admiral's. Judge Craig rejected Admiral's argument that any failure by Grace to fund the SIR relieved Admiral of its obligations to pay claims under the policy. In re Grace, 341 B.R. at 403. Notably, Judge Craig also rejected Admiral's contention that because undefended claims could easily result in judgments in excess of $50,000, Admiral, for all practical purposes, would be compelled to cover claims within Grace's $50,000 SIR. See In re Grace, 341 B.R. at 404 ("[Being] put in the position of making a choice between the less financially undesirable of two

---

[1] In its motion for summary judgment before the bankruptcy court, Admiral also claimed that Grace's failure to pay the retrospective premium claimed to be due had terminated the policy prior to Grace's Chapter 11 bankruptcy filing. The bankruptcy court rejected this argument. Appellant, however, does not renew its retrospective premium argument on appeal and, accordingly, the Court does not consider it.

3

alternatives is not the same as being legally compelled to make payment."). Thus, the bankruptcy court found that Admiral's *choice* to defend claims that fell within Grace's SIR did not amount to an increase in Admiral's *obligations* under the policy. (emphasis added). Judge Craig's written opinion observed in *dicta* that "[i]t does not appear from the language of the self-insured retention that defense costs are, in fact included in the retained limit." In re Grace, 341 B.R. at 404. However, Judge Craig's order resolving the adversary proceeding in favor of Grace did not incorporate this aspect of the written opinion.[2]

Finally, Judge Craig found that Grace did not breach the policy's cooperation clause by agreeing to lift the automatic stay to allow consenting personal injury plaintiffs to pursue their claims against it in state court. The bankruptcy court reasoned that the purpose of the automatic stay was to protect the estate's property from being seized by individual creditors, and "where a plaintiff seeks relief from the stay to pursue a claim in another forum, the interests or desires of the insurance company which provides coverage of the claim are not considered in determining whether the stay should be lifted." Id. (citing In re Sonnax Industries, Inc., 907 F.2d 1280, 1287 (2d Cir. 1990) (listing the factors to consider in determining whether to modify the automatic stay to permit an action against the debtor to proceed in another forum).

On April 10, 2006, Judge Craig entered judgment for Grace, declaring that Admiral "must defend and indemnify [Grace] under the [i]nsurance [p]olicy…but only to the extent the [c]overed [c]laims exceed [Grace's] self insured retention under the [i]nsurance [p]olicy, and without regard to whether [Grace] has exhausted its self-insured retention under the [i]nsurance

---

[2] As this Court stated in oral argument on April 22, 2009, appeals are taken from an order or judgment, not from the accompanying written opinion (Tr. of Oral Argument, Apr. 22, 2009, at 19). Insofar as Admiral seeks to modify the language in Judge Craig's opinion supporting the court's actual order, this Court will make no such editorial modification.

4

[p]olicy". (Order Granting Debtor's and Debtor in Possession's Mot. for Summ. J. and Den. Mot. for Summ. J. by Admiral Ins. Co., ¶ 3, Apr. 10, 2006)[hereinafter J. Craig's Order]. This appeal ensued.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Bankruptcy Procedure 8013, this Court may affirm, modify, or reverse a decision of the bankruptcy court, or remand with instructions for further proceedings. See Fed. R. Bank. P. 8013. Because only the bankruptcy judge's conclusions of law are in dispute, this Court reviews the bankruptcy court's order de novo. See, e.g., Am. Safety Indem. Co. v. Official Comm. of Unsecured Creditors, No. 05-cv-5877, 2006 WL 2870612, at * 1 (E.D.N.Y. Oct. 3, 2006); Argonaut Ins. Co. v. Ames Dep't Stores, Inc., 1995 WL 311764 at *1 (S.D.N.Y. May 18, 1995).

## DISCUSSION

Admiral argues (1) that it has no duty to defend claims against Grace unless and until Grace funds *and* exhausts the SIR, (2) that defense costs are part of the SIR, and (3) that Grace breached the cooperation clause by entering into stipulations with personal injury plaintiffs to lift the automatic stay, thereby forfeiting coverage under the policy.[3]

---

[3] On or about October 29, 2008, the parties stipulated that any allowed unsecured claim by Admiral for indemnity and defense costs paid within the SIR is subject to the terms and provisions of the Plan and Confirmation order, including the Plan's 75% maximum recovery allowed for Class 7 General Unsecured Claims.

## I.   ADMIRAL'S DUTY TO DEFEND CLAIMS BEFORE GRACE FUNDS AND EXHAUSTS THE SIR

Admiral argues that it is not obligated to defend any actions brought against Grace until Grace has exhausted, that is, paid out the $50,000 SIR to a claimant. The bankruptcy court's order, however, merely directs that "Admiral must defend and indemnify [Grace] under the Insurance Policy...but *only to the extent the Covered Claims exceed [Grace's] self insured retention* under the Insurance Policy" (J. Craig's Order at ¶3)(emphasis added). Stated simply, the order imposes no obligation for Admiral to pay a penny before a claimant had been awarded $50,000, but that such obligation exists whether or not Grace actually pays a penny of its $50,000 SIR obligation. As the bankruptcy court noted, "Admiral is not legally required to fund any claims within the self-insured retention. If it chooses to defend claims that would fall within the retained limit, the choice will be voluntary, to protect its financial interests. This does not constitute an increase of Admiral's obligations under the Policy." In re Grace, 341 B.R. at 404.

This Court agrees with the bankruptcy court's determination and its observation that Admiral is free (or not) to save itself money by paying what would have been Grace's obligation rather than playing out all of the litigation cards with their attendant risks. The Court finds, in sum, no error in the bankruptcy court's reasoning and affirms its order determining that Admiral is not relieved of its obligations to Grace under the policy to cover the costs of the claims that are in excess of the SIR, regardless whether the claimant receives payment of that portion of the claim awarded which falls within the SIR.

Notwithstanding the appropriate simplicity of the bankruptcy court's actual order, given its robustness, the Court will address in more detail Admiral's fundamental argument that its duties under the policy should lie dormant until Grace actually pays on a SIR obligation. Because of its insolvency, of course, Grace cannot fund the SIR much less pay out a covered

6

claim. The practical effect for Admiral is a Morton's fork—the choice to defend the claims within the SIR before the costs reach $50,000 or the equally undesirable choice to tarry until the smaller claims ultimately exceed the $50,000 SIR because they were not defended or settled. Hence, Admiral's argument that the order appealed from imposes a new, increased, and extra-contractual obligation, for, had Grace paid out claims within the SIR as it would have been obligated to do but for bankruptcy, Admiral would have no exposure on such a claim.

As previously stated, Admiral's election to assume costs within Grace's $50,000 SIR is not the equivalent to a declaration that Admiral is *obligated* to do so. It is only obligated to do what it contracted to do and that obligation is not relieved by Grace's bankruptcy because "[s]ection 365 of the Bankruptcy Code makes it clear that even in the absence of an applicable statutory provision . . . the failure of a bankrupt insured to fund a self-insured retention does not relieve the insurer of the obligation to pay claims under the policy." See, e.g., Am. Safety Indem. Co. v. Vanderveer Estates Holding, LLC (In re Vanderveer Estates Holding, LLC), 328 B.R. 18, 147 (Bankr. E.D.N.Y. 2005)[hereinafter In re Vanderveer]; Am. Safety Indem. Co. v. Official Comm. of Unsecured Creditors, 2006 WL 2850612 (E.D.N.Y.) (requiring the insurer to pay bankrupt insured's defense costs within the self-insured retention amount). In fact, allowing an insured to fund a SIR in the face of a Chapter 11 plan would be "contrary to fundamental principles of bankruptcy law, which requires the same treatment of creditors having the same priority." In re Vanderveer, 328 B.R. 18, 27 (Bankr. E.D.N.Y. 2005)(citing 11 U.S.C. § 1123(a)(4)). Plus, Illinois law, the law governing there, makes specific provision that the failure of a debtor insured to fulfill its obligations under an insurance contract does not excuse performance by the insurer. In re Vanderveer, 328 B.R. at 24 (citing Ill. Ins. Code, Chapter 215, § 5/388).

Although *In re Vanderveer* was decided using Illinois law, the bankruptcy court correctly applied its reasoning here because New York law[4] similarly requires that insurance policies include "[a] provision that the insolvency or bankruptcy of the person insured, or the insolvency of his estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract." See N.Y. Ins. Law § 3420. Indeed, cases applying Illinois law in reviewing whether a Chapter 11 debtor-insured must pay the SIR before triggering coverage have cited to cases applying New York law.[5]

The bankruptcy clause at issue in *In re Vanderveer*, moreover, is nearly identical to the one here. Section 3420 of the New York Insurance Law, as reflected by the bankruptcy clause in the policy, provides that the "[b]ankruptcy or insolvency of the insured . . . will not relieve [Admiral] of [its] obligations under this Coverage Part." (The policy at 9). See also N.Y. Ins. Law § 3420. But, while the policy and state law are silent as to what claims the insurer may make on the debtor's estate (and Admiral has filed a proof of claim for amounts within the SIR it allegedly paid), they also create no post-petition obligation for more payments by the debtor as a condition of the insurer's obligation. Clearly, moreover, a post-petition directive requiring Grace to actually fund, much less exhaust, the SIR would put Admiral in a better position than Grace's

---

[4] Even though there is no choice of law provision in the policy, the appellant asserts that New York law governs the interpretation of the policy; both parties rely on New York law and do not claim that the law of any other forum applies. Therefore, choice of law is not at issue and the Court applies New York law. (Tr. of Oral Argument before J. Craig, Nov. 22, 2005, at 32). See also Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004)(since parties relied on New York law, such implied consent was sufficient to establish choice of law).

[5] Am. Safety Indem. Co. v. Official Comm. of Unsecured Creditors, 05-cv-5877, 2006 WL 2850612, at * 4 (E.D.N.Y. Oct. 3, 2006)(citing both New York and Illinois cases in affirming *In re Vanderveer*). Admiral's contrary argument relying on In re September 11th Liab. Ins. Coverage Cases, 333 F.Supp.2d 111 (S.D.N.Y. 2003) is unavailing and irrelevant to the issue at hand. While a SIR provision was involved in that case, the commonality ends there. There was no discussion as to what implication the exhaustion or payment pursuant to a SIR provision would have under bankruptcy law.

other creditors—an outcome that stands in direct contravention to the purpose and intent behind the bankruptcy law and which cannot be compelled either by contract or state law. See, e.g., Am. Safety Indem. Co. v.Official Comm. of Unsecured Creditors, 05-cv-5877, 2006 WL 2850612, at * 4 (E.D.N.Y. Oct. 3, 2006) ("[O]rdering the bankruptcy estate to pay the self-insured retention in advance would be inconsistent with bankruptcy law, by giving one unsecured creditor of the bankruptcy estate priority over the others").

Additionally, Admiral's argument that the policy's SIR endorsement should supersede the policy's bankruptcy clause is unavailing. New York insurance law provides that a policy and an endorsement should be read together unless they are so contrary that they cannot be reconciled. More importantly, all else notwithstanding, if a policy or contractual provision is made in contravention of law, that contract or contractual provision is void. See, e.g., Hoffman v. Empire Blue Cross & Blue Shield, No. 96-cv-5448, 1999 WL 782517 (S.D.N.Y. Sept. 30, 1999); Travelers Ins. Co. v. Russo, 155 Misc. 589, 280 N.Y.S. 99 (Sup. Ct. New York County 1935) (contract to limit statutory provision that controlled the rights, duties, and obligations of the insurer); see also Progressive Cas. Ins. Co. v. Baker, 290 A.D.2d 676, 687 736 N.Y.S.2d 447, 449 (3d Dep't 2002).

Here, construing the SIR endorsement as Admiral suggests to nullify the policy's bankruptcy clause is not consistent with New York law's direction to harmonize policy provisions (which the order below does); nor is it consistent with the purpose of New York Insurance Law section 3420, which requires preservation of the rights of a bankrupt insured under the policy. See Lang v. Hanover Ins. Co., 3 N.Y.3d 350, 355-56, 787 N.Y.S.2d 211, 214-15, 820 N.E.2d 855, 858-59 (2004)("[New York Insurance Law § 3420] makes clear that bankruptcy does not relieve the insurance company of its obligation to pay damages for injuries

9

or losses covered under an existing policy."). Indeed, under New York law, every policy or contract insuring against liability *must* contain a provision asserting that bankruptcy or insolvency does not release the insurer from its obligations under the policy. To allow Admiral to withdraw from its obligations under the policy on any theory that the SIR endorsement supersedes the bankruptcy clause required by state law would validate the very conduct that § 3420 was meant to prohibit. In short, because the bankruptcy clause must be given full force and effect as a matter of state insurance law, then, given that law, the policy's SIR endorsement cannot be construed under any theory as precluding Grace from coverage if it cannot fund the SIR as contractually required. Grace, therefore, is neither required to fund nor exhaust the SIR before Admiral's obligations to pay claims—settled or litigated— in excess of $50,000 is triggered. On this basis too, the bankruptcy court's order is affirmed.

## II. WHETHER DEFENSE COSTS ARE INCLUDED OR SEPARATE FROM THE SIR

Admiral also appeals the bankruptcy court's decision insofar as it finds that Admiral's obligation to provide a defense is separate from the cost limitation attributable to the SIR. Specifically, Admiral objects to the following language in the bankruptcy court's memorandum and order: "It does not appear from the language of the self-insured retention that defense costs are, in fact included in the retained limit." In re Grace, 341 B.R. at 404. Appellant asks the Court to modify the language in Judge Craig's order "to make it clear that Admiral's obligation to provide a defense is *not* separate from the SIR." (Admiral's Br. at 30). According to Admiral, "the language in the Order should clearly state that pursuant to the clear language in the Policy, Grace must defend itself for claims within the SIR". (Id.).

Whether defense costs are part of the SIR is not now in dispute. Both parties agree that the SIR includes defense costs and have submitted stipulated language to that effect. In line with the stipulation, the Court hereby modifies Judge Craig's order to add the following language:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED;**
> that pursuant to paragraph two (2) of the Self-Insured Retention (S.I.R.) Endorsement Number 04 of the Insurance Policy, defense costs are, in fact, included in the Retained Limit as expenses incurred under the Supplementary Payments – Coverages A and B provisions of the Insurance Policy and any payments made by Admiral of covered claims within the S.I.R. shall not erode the S.I.R.

The modification has no bearing on Admiral's defense obligations or costs incurred with respect to claims exceeding the SIR.

### III. WHETHER GRACE BREACHED THE POLICY'S COOPERATION CLAUSE

On its final tack, Admiral argues that Grace breached the policy's cooperation clause when it agreed to lift the automatic stay with respect to the state court personal injury actions against it. This breach, Admiral claims, absolves Admiral from any obligations under the policy.

The cooperation clause states simply, per the norm, that Grace has the duty to "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit.'" (The policy, p. 9.). Judge Craig, in rejecting Admiral's argument, reasoned that "where a plaintiff seeks relief from the stay to pursue a claim in another forum, the interests or desires of the insurance company which provides coverage of the claim are not considered in determining whether the stay should be lifted." In re Grace, 341 B.R. at 405. Clearly, in harmony with New York's public policy, Admiral's ultimate contractual obligations with respect to the tort claims are to be unaffected by Grace's Chapter 11 proceedings. To that end, the cooperation clause

only required Grace to assist in the ultimate disposition of the actual claims, not to take on a partner to make litigation decisions solely regarding Grace's own bankruptcy reorganization.

Viewed from the perspective of the actual defense and disposition of claims made on the policy, Admiral has not demonstrated that Grace failed to cooperate. Thrasher v. U.S. Liab. Ins. Co., 19 N.Y.2d 159, 278 N.Y.S.2d 793, 800, 225 N.E.2d 503, 508 (1967)(stating that burden of demonstrating insured's lack of cooperation rests with insurer). To disclaim coverage on the ground of an insured's lack of cooperation, an insurer must show (1) that it acted diligently in seeking to secure the insured's cooperation, (2) that the efforts employed by the insurer were reasonably calculated to obtain the insured's cooperation, and (3) that the attitude of the insured, after his cooperation was sought, was one of willful and avowed obstruction. Thrasher, 19 N.Y.2d at 169-70, 278 N.Y.S.2d at 800-01, 225 N.E.2d at 508-09. Admiral, pointedly, has not even alleged that it ever sought Grace's cooperation with respect to those previously stayed claims; nor, correspondingly, has it shown that Grace's attitude was one of "willful and avowed obstruction." New York City Hous. Auth. v. Hous. Auth. Risk Retention Group, Inc., 203 F.3d 145, 151-152 (2d Cir. 2000)(finding that since insurer never attempted to persuade insured to cooperate, there could be no willful obstruction). In addition, and critically, Admiral has not even argued here that Grace's actions were done with the design to willfully obstruct Admiral's investigation or settlement of claims under the policy. And, it is hard to imagine how it could.

Admiral asserts only that "Grace breached this [cooperation] clause when it unilaterally entered into stipulations with numerous plaintiffs lifting the automatic stay and allowing them to proceed with their personal injury actions to pursue Grace's available insurance proceeds." (Appellant's Br. at 28.) Even accepting Admiral's contention that Grace should have given it

12

advance notice beyond the filing of the stipulations on the bankruptcy court docket, such failure is far from a willful obstruction of Admiral's effort to defend those actions. To be sure, these stipulations do not impinge on Admiral's ability to defend the actions. The stipulations merely capped the potential damages, if plaintiffs should prevail against Grace, to the proceeds of the policy. The stipulations do not acknowledge liability nor do they set recovery amounts. Admiral, on this record, has failed to establish that Grace has breached the policy's cooperation clause in any way. Therefore, the determination of the bankruptcy court that Grace did not breach the cooperation clause by stipulating to lift the stay in cases brought by the personal injury plaintiffs is affirmed.

### IV. ADMIRAL'S UNSECURED CLAIMS AGAINST GRACE

Lastly, Admiral also requests that, should it cover costs within the SIR, that this Court direct that Admiral will have an unsecured claim against Grace for breach of its SIR obligations. In response, the Court observes that caselaw supports the conclusion that the "[f]ailure of the debtor to perform these continuing obligations [funding the self-insured retention, for example] does not excuse the insurer from performance under the contract, but gives rise to an unsecured claim by the insurer for any damages incurred by reason of the debtor's breach of contract." In re Vanderveer, 328 B.R. at 25; see also Am. Safety Indem. Co., 2006 WL 2850612 at *4 (holding that costs incurred by the insurer for defending personal injury claims within the self-insured retention should be filed as unsecured claims and handled by the bankruptcy estate accordingly); see also 11 U.S.C.A. § 365. Nevertheless, since the Court affirms the bankruptcy court's decision finding that Admiral is *not* required to cover claims or costs within the SIR, to

13

order that Admiral has an unsecured claim if it should cover these expense items would be premature and speculative. Hence, the Court makes no determination as to Admiral's entitlement to an unsecured claim for such expenses under the Chapter 11 plan. This is a matter best reserved for the bankruptcy court in the first instance.[6]

## CONCLUSION

For the reasons set forth above, the bankruptcy court's judgment is affirmed as modified by the consent of the parties as expressed in their stipulated amendment of the bankruptcy court's order.

The Clerk is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
July 23, 2009

ERIC N. VITALIANO
United States District Judge

---

[6] In fact, Grace has objected to certain proofs of claim submitted by Admiral. These objections are currently pending before the bankruptcy court. Grace has since moved before that court to approve a stipulation between Grace and Admiral resolving the objections. See Case No. 1:04-27013-CEC, Docket Entry No. 1135, (July 14, 2009).

14